**Slip Op. 00-106**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

———————————————————————————  :
                                :
SKF USA INC. and SKF SVERIGE AB,  :
                                :
       Plaintiffs,              :
                                :
       v.                       :  Court No. 99-08-00470
                                :
UNITED STATES,                   :
                                :
       Defendant,                :
                                :
THE TORRINGTON COMPANY,           :
                                :
       Defendant-Intervenor.     :
———————————————————————————  :

Plaintiffs, SKF USA Inc. and SKF Sverige AB (collectively "SKF"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews</u>, 64 Fed. Reg. 35,590 (July 1, 1999). Specifically, SKF contends that Commerce unlawfully: (1) conducted a duty absorption inquiry under 19 U.S.C. § 1675(a)(4) (1994) for the subject reviews of the applicable antidumping duty orders covering antifriction bearings from Sweden; (2) determined that it applied a reasonable duty absorption methodology and that duty absorption had in fact occurred; and (3) excluded below-cost sales from the profit calculation for constructed value under 19 U.S.C. § 1677b(e)(2) (1994).

**Held:** SKF's USCIT R. 56.2 motion is denied in part and granted in part. The case is remanded to Commerce to annul all findings and conclusions made pursuant to the duty absorption inquiry conducted for the subject reviews.

[SKF's motion is denied in part and granted in part. Case remanded.]

Dated: August 23, 2000

Steptoe & Johnson LLP (Herbert C. Shelley and Alice A. Kipel) for plaintiffs.

David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: John F. Koeppen and David R. Mason, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz) for defendant-intervenor.


**OPINION**

**TSOUCALAS, Senior Judge:**  Plaintiffs, SKF USA Inc. and SKF Sverige AB (collectively "SKF"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews ("Final Results"), 64 Fed. Reg. 35,590 (July 1, 1999).

**BACKGROUND**

This case concerns the ninth administrative review of the outstanding 1989 antidumping duty orders on antifriction bearings (other than tapered roller bearings) and parts thereof ("AFBs") imported from Sweden for the period of review ("POR") covering May 1, 1997 through April 30, 1998.  See Final Results, 64 Fed. Reg. at 35,590; Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings and Parts Thereof From Sweden, 54 Fed. Reg. 20,907 (May 15, 1989).  In accordance with 19 C.F.R. § 351.213 (1998), Commerce initiated the administrative reviews of these orders on June 29, 1998, see Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 63 Fed. Reg. 35,188, and published the preliminary results of the subject reviews on February 23, 1999, see Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Rescission of Administrative Reviews ("Preliminary Results"), 64 Fed. Reg. 8790.  Commerce published the Final Results on July 1, 1999.  See 64 Fed. Reg. at 35,590.

Since the administrative reviews at issue were initiated after December 31, 1994, the applicable law in this case is the antidumping statute as amended by the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994) (effective Jan. 1, 1995).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (1994) and 28 U.S.C. § 1581(c) (1994).

## STANDARD OF REVIEW

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994); see NTN Bearing Corp. of America v. United States, 24 CIT ___, ___, 104 F. Supp. 2d 110, 115-16 (2000) (detailing Court's standard of review for antidumping proceedings).

## DISCUSSION

### I.   Duty Absorption Inquiry

#### A. Background

Title 19, United States Code, § 1675(a)(4) (1994) provides that during an administrative review initiated two or four years after the "publication" of an antidumping duty order, Commerce, if requested by a domestic interested party, "shall determine whether antidumping duties have been absorbed by a foreign producer or exporter subject to the order if the subject merchandise is sold in the United States through an importer who is affiliated with such foreign producer or exporter." Section 1675(a)(4) further provides that Commerce shall notify the International Trade Commission ("ITC") of its findings regarding such duty absorption for the ITC to consider in conducting a five-year ("sunset") review under 19 U.S.C. § 1675(c), and the ITC will take such findings into account in determining whether material injury is likely to continue or recur if an order were revoked under § 1675(c). See 19 U.S.C. § 1675a(a)(1)(D) (1994).

On May 29, 1998 and July 29, 1998, Torrington requested that Commerce conduct a duty absorption inquiry pursuant to § 1675(a)(4) with respect to various respondents, including SKF, to ascertain whether antidumping duties had been absorbed during

the ninth POR.  See Final Results, 64 Fed. Reg. at 35,600.

In the Final Results, Commerce determined that duty absorption had in fact occurred for the ninth review.  See id. at 35,591, 35,600-02.  In asserting authority to conduct a duty absorption inquiry under § 1675(a)(4), Commerce first explained that for "transition orders" as defined in § 1675(c)(6)(C) (that is, antidumping duty orders, inter alia, deemed issued on January 1, 1995), regulation 19 C.F.R. § 351.213(j) provides that Commerce will make a duty absorption inquiry, if requested, for any antidumping administrative review initiated in 1996 or 1998.  Commerce concluded that (1) because the antidumping duty orders on the AFBs in this case have been in effect since 1989, the orders are transition orders pursuant to § 1675(c)(6)(C), and (2) since this review was initiated in 1998 and a request was made, it had the authority to make a duty absorption inquiry for the ninth POR.  See id.

## B.    Contentions of the Parties

SKF contends that Commerce lacked authority under § 1675(a)(4) to conduct a duty absorption inquiry for the ninth POR of the outstanding 1989 antidumping duty orders.  See SKF's Br. Supp. Mot. J. Agency R. at 2, 9-16 ("SKF's Br."); SKF's

Reply Br. at 2-30. In the alternative, SKF asserts that even if Commerce possessed the authority to conduct such an inquiry, Commerce's methodology for determining duty absorption was contrary to law and, accordingly, the case should be remanded to Commerce to reconsider its methodology. See SKF's Br. at 3, 16-35; SKF's Reply Br. at 31-42.

Commerce argues that it: (1) properly construed subsections (a)(4) and (c) of § 1675 as authorizing it to make a duty absorption inquiry for antidumping duty orders that were issued and published prior to January 1, 1995; and (2) devised and applied a reasonable methodology for determining duty absorption. See Def.'s Mem. in Opp'n to Pls.' Mot. J. Agency R. at 2, 5-24 ("Def's Br."). Also, Commerce asserts that no statutory provision or legislative history specifically provides that Commerce is "precluded" from conducting a duty absorption inquiry with respect to merchandise covered by a transition order. See id. at 2.

The Torrington Company ("Torrington") generally agrees with Commerce's contentions. See Torrington's Resp. to Pls.' Mot. J. Agency R. at 2-4, 7-41 ("Torrington's Resp."). In addition, Torrington asserts that Commerce has the "inherent" authority,

aside from § 1675(a)(4), to conduct a duty absorption inquiry in any administrative review.  See id. at 3, 30-37.


   C.   Analysis

   In SKF USA Inc. v. United States, 24 CIT __, 94 F. Supp. 2d 1351 (2000), this Court determined that Commerce lacked statutory authority under § 1675(a)(4) to conduct a duty absorption inquiry for antidumping duty orders issued prior to the January 1, 1995 effective date of the URAA.  See id. at __, 94 F. Supp. 2d at 1357-59.  The Court noted that Congress expressly prescribed in the URAA that § 1675(a)(4) "must be applied prospectively on or after January 1, 1995 for 19 U.S.C. § 1675 reviews."  Id. at 1359 (citing URAA's § 291).

   Because Commerce's duty absorption inquiry, its methodology and the parties' arguments at issue in this case are practically identical to those presented in SKF USA, the Court adheres to its reasoning in SKF USA.  Moreover, contrary to Torrington's assertion, the Court finds that Commerce does not have the "inherent" authority to conduct a duty absorption inquiry in any administrative review. Rather,  the statutory scheme, as noted, clearly provides that the inquiry must occur in the second or fourth administrative review  after  the  publication  of  the

antidumping duty order, not in any other review, and upon the request of a domestic interested party. Accordingly, the Court finds that Commerce did not have statutory or inherent authority to undertake a duty absorption investigation for the outstanding 1989 antidumping duty orders in dispute here.

## II. Profit Calculation for Constructed Value

### A. Background

For this POR, Commerce used constructed value ("CV") as the basis for normal value ("NV") "when there were no usable sales of the foreign like product in the comparison market." Preliminary Results, 64 Fed. Reg. at 8795. Commerce calculated the profit component of CV using the statutorily preferred methodology of 19 U.S.C. § 1677b(e)(2)(A) (1994). See Final Results, 64 Fed. Reg. at 35,611. Specifically, in calculating CV, the statutorily preferred method is to calculate an amount for profit based on "the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review . . . in connection with the production and sale of a foreign like product [made] in the ordinary course of trade, for consumption in the foreign country." 19 U.S.C. § 1677b(e)(2)(A).

In applying the preferred methodology for calculating CV profit, Commerce determined that "an aggregate calculation that encompasses all foreign like products under consideration for normal value represents a reasonable interpretation of [§ 1677b(e)(2)(A)]" and "the use of [such] aggregate data results in a reasonable and practical measure of profit that [Commerce] can apply consistently where there are sales of the foreign like product in the ordinary course of trade." Id. Also, in calculating CV profit under § 1677b(e)(2)(A), Commerce excluded below-cost sales from the calculation which it disregarded in the determination of NV pursuant to 19 U.S.C. § 1677b(b)(1) (1994). See id. at 35,612.

B.    Contentions of the Parties

SKF contends that Commerce's use of aggregate data encompassing all foreign like products under consideration for NV in calculating CV profit is contrary to § 1677b(e)(2)(A). See SKF's Br. at 36-59. Instead, SKF claims that Commerce should have relied on the alternative methodology of § 1677b(e)(2)(B)(i), which provides a CV profit calculation that is similar to the one Commerce used, but does not limit the calculation to sales made in the ordinary course of trade, that

is, below-cost sales are not excluded from the calculation. See id. at 36, 58-59. SKF also asserts that if Commerce's exclusion of below-cost sales from the numerator of the CV profit calculation is lawful, Commerce should nonetheless include such sales in the denominator of the calculation to temper bias which is inherent in the Commerce's dumping margin calculations. See id. at 4, 54-57.

Commerce responds that it properly calculated CV profit pursuant to § 1677b(e)(2)(A) based on aggregate profit data of all foreign like products under consideration for NV. See Def.'s Br. at 2-3, 27-47. Consequently, Commerce maintains that since it properly calculated CV profit under subparagraph (A) rather than (B) of § 1677b(e)(2), it correctly excluded below-cost sales from the CV profit calculation. See id. at 3, 38-40. Torrington agrees with Commerce's methodology for calculating CV profit. See Torrington's Resp. at 4-5, 41-47.

### C. Analysis

In RHP Bearings Ltd. v. United States, 23 CIT __, 83 F. Supp. 2d 1322 (1999), this Court upheld Commerce's CV profit methodology of using aggregate data of all foreign like products under consideration for NV as being consistent with the

antidumping statute.  <u>See id.</u> at ___, 83 F. Supp. 2d at 1336.

Since Commerce's CV profit methodology and SKF's arguments at

issue in this case are practically identical to those presented

in <u>RHP Bearings</u>, the Court adheres to its reasoning in <u>RHP</u>

<u>Bearings</u>.  The Court, therefore, finds that Commerce's CV profit

methodology is in accordance with law.

Moreover, since (1) § 1677b(e)(2)(A) requires Commerce to

use the actual amount for profit in connection with the

production and sale of a foreign like product in the ordinary

course of trade, and (2) 19 U.S.C. § 1677(15) (1994) provides

that below-cost sales disregarded under § 1677b(b)(1) are

considered to be outside the ordinary course of trade, the Court

finds that Commerce properly excluded below-cost sales from the

CV profit calculation.

**CONCLUSION**

For the foregoing reasons, the case is remanded to Commerce to annul all findings and conclusions made pursuant to the duty absorption inquiries conducted for the subject reviews. Commerce's final determination is affirmed in all other respects.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:     August 23, 2000
           New York, New York